**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SEKIGUCHI CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A HERETO, <br><br> Defendants. | Case No.: 1:25-cv-5792 |

**COMPLAINT**

Plaintiff Sekiguchi Co., Ltd. (collectively, "Sekiguchi" or "Plaintiff") brings this action against the Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations identified in Schedule A hereto (collectively, "Defendants"). In support of this Complaint, Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. and pursuant to 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

4935-4181-3572.2

1

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, as Defendants directly target consumers in the United States, including in Illinois and in this District, through acts of counterfeiting and trademark infringement, as described herein.

4.     Specifically, Defendants, under the cover of aliases, operate Internet enterprises, online marketplaces, profiles, stores and/or accounts (collectively, "Defendant Internet Stores"), through which Defendants use counterfeit or infringing versions of Plaintiff's trademarks to sell infringing products to consumers in Illinois and in this District. Schedule A identifies the aliases Defendant's use ("Defendant Aliases") and URLs associated with each Defendant Internet Store.

5.     Defendants have targeted and sought sales from Illinois residents by operating online stores that offer infringing products and shipping to the United States, including to addresses in Illinois and in this District in exchange for payments in U.S. dollars.

## THE PLAINTIFF

6.     Sekiguchi is a corporation having its principal place of business in Japan.

7.     MONCHHICHI was created in 1974 and became one of the most well-known brands in the toy business. Because of its success, four television series were produced based on the MONCHHICHI characters. The success was not only in Japan, but also in Europe, North America, South America and Asia. SEKIGUCHI CO., LTD. is the official source of MONCHHICHI products:



https://jellybeet.com/monchhichi/

8.      Sekiguchi is the registered owner of marks for MONCHHICHI, which include those registered at U.S. Trademark Registration Nos. 3,055,482, 3,087,366, 3,173,211, 3,211,633, 4,634,637, 5,238,565, 5,911,191 and 6,488,482 (collectively, the "MONCHHICHI Trademarks" or "Asserted Trademarks"). *See*, Ex. 1.

9.      Since the initial launch of its MONCHHICHI brand, Plaintiff's MONCHHICHI Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote its MONCHHICHI Trademarks in the industry and to consumers.

10.     Sekiguchi has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the MONCHHICHI Trademarks. As a result, products associated with the MONCHHICHI Trademarks are recognized and exclusively associated by consumers, the public, and the trade as products authorized by Plaintiff.

11.     Plaintiff has invested substantial time, money, and effort in building up and developing consumer awareness, goodwill, and recognition in the MONCHHICHI Trademarks.

12.     The success of the MONCHHICHI Trademarks is due in large part to Plaintiff's marketing, promotional, and distribution efforts.

13.     As a result of Plaintiff's efforts, the quality of the Sekiguchi Products, the promotional efforts for Plaintiff's products and designs, press and media coverage, and social media coverage, members of the public have become familiar with the MONCHHICHI Trademarks and associate them exclusively with Plaintiff.

14.     Plaintiff has made efforts to protect Plaintiff's interests in and to theMONCHHICHI Trademarks. No one other than Plaintiff and Plaintiff's licensees are authorized to manufacture, import, export, advertise, create derivative works, offer for sale, or sell any goods utilizing the MONCHHICHI Trademarks without the express written permission of Plaintiff.

## THE DEFENDANTS

15.     Defendants are individuals and business entities who, on information and belief, reside outside the United States. Defendants conduct business throughout the United States, including within Illinois and in this District, through the operation of online enterprises such as the Defendant Internet Stores.

16.     Tactics used by Defendants to conceal their identities and the full scope of their infringing operations and relatedness make it virtually impossible for Plaintiff to learn Defendants' true identities and the precise interworking of their counterfeit network.

## THE DEFENDANTS' UNLAWFUL CONDUCT

17.     Plaintiff has identified numerous marketplace profiles associated with the Defendant Internet Stores on third-party platforms, such as Amazon or Walmart.com. *See*, Schedule A. Defendants use the Defendant Aliases and the Defendant Internet Stores to

advertise, offer for sale, sell, and import Infringing Products to consumers in this District and throughout the United States.

18.     According to an intellectual property rights seizures statistics report issued by U.S. Customs and Border Protection ("CBP"), the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion, an increase of 152% over the previous Fiscal Year. *See*, Exhibit 2 (Intellectual Property Rights Seizure Statistics, Fiscal Year 2021), p. 5.

19.     CBP reports that the vast majority of its intellectual property seizures correspond to smaller international mail and express shipments, such as those used by Defendants. *See*, Exhibit 2 at p. 37. CPB also reports that "[t]rade in counterfeit and pirated goods threatens America's innovation economy, the competitiveness of our businesses, the livelihoods of U.S. workers, and, in some cases, national security and the health and safety of consumers." Exhibit 3, p. 1.

20.     The Department of Homeland Security ("DHS") has reported that commonly owned and/or interrelated enterprises have many online marketplace profiles that appear unrelated:

> Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated.

Exhibit 4, p. 39 (Combating Trafficking in Counterfeit and Pirated Goods).

21.     Defendants go to great lengths to operate anonymously and often use multiple Defendant Aliases to register and operate their networks of Defendant Internet Stores.

22. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some or all of the Defendant Internet Stores use substantially identical or equivalent language and/or imagery to sell Infringing Products.

23. In addition, the Infringing Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, certain Defendants are interrelated.

24. E-commerce store operators, like Defendants, communicate with each other and regularly participate in and/or access websites, such as sellerdefense.cn, to aid in engaging in tactics to avoid detection and/or judgment in pending litigation.

25. Many of the Defendants' storefronts include other notable common features, including common payment methods, lack of contact information, identically or similarly-appearing products, identical or similarly priced items and volume sales discounts, and the use of similar text and/or images. For some Defendants, these commonalities suggest potential common ownership or coordination.

26. Moreover, each Defendant unfairly benefits from anonymously operating in the midst of a swarm of dozens of other infringers, each individually, and all collectively, violating Plaintiff's registered trademarks with impunity through misuse of e-commerce platforms and marketplaces. These circumstances indicate that Defendants' infringing actions arise out of the same transaction or occurrence, or series of transactions or occurrences. Further, the Defendants' infringement of Plaintiff's trademark rights implicates common questions of law and fact.

27. Defendants' unauthorized use and counterfeiting of the Asserted Trademarks in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and has irreparably harmed Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

29. Plaintiff is the exclusive owner of the MONCHHICHI Trademarks. The Registrations for the MONCHHICHI Trademarks are in full force and effect.

30. The marks used by Defendants in their promotion, advertising, marketing, offers for sale, and sale of the infringing products are identical with, or substantially indistinguishable from, the registered MONCHHICHI Trademarks.

31. Defendants have engaged in unauthorized uses in commerce of counterfeit imitations of the registered MONCHHICHI Trademarks in connection with the sales, offers for sale, distribution, and/or advertising of infringing goods.

32. The MONCHHICHI Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the MONCHHICHI Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the MONCHHICHI Trademarks without Plaintiff's authorization or permission.

34.     Upon information and belief, Defendants have knowledge of Plaintiff's rights in the MONCHHICHI Trademarks, and are willfully infringing and intentionally using counterfeits of the MONCHHICHI Trademarks despite such knowledge.

35.     Defendants' willful, intentional and unauthorized use of the MONCHHICHI Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

36.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known MONCHHICHI Trademarks.

38.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of infringing products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

39.     Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

40.     Defendants' promotion, advertising, marketing, offering for sale, and sale of infringing products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' infringing products by Plaintiff.

41. By using the MONCHHICHI Trademarks in connection with the sale of infringing products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the infringing products.

42. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the infringing products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

44. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

45. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their infringing products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

46. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

47.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
## COPYRIGHT INFRINGEMENT

48.     Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

49.     At all relevant times, Sekiguchi is, and has been, the owner of all valid and enforceable rights to the MONCHHICHI Works, which contain copyrightable subject matter under 17 U.S.C. §§ 101 and 501, et seq.

50.     The MONCHHICHI Works have significant value and have been produced at considerable expense.

51.     The MONCHHICHI Works are the subject of valid certificates of copyright registrations for the MONCHHICHI Works. Sekiguchi has complied with the registration requirements of 17 U.S.C. § 411(a) for the MONCHHICHI Works.

52.     Defendants do not have any ownership interest in the MONCHHICHI Works.

53.     Defendants have had access to the MONCHHICHI Works, including via the internet.

54.     Without authorization from Sekiguchi, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivative works of the MONCHHICHI Works, as displayed in relation to the Defendant Internet Stores and the corresponding infringing products in violation of 17 U.S.C. § 501 and 17 U.S.C. § 106(1) - (3), (5).

55.     Defendants' images, artwork and derivative works are virtually identical to and/or substantially similar to the MONCHHICHI Works. Such conduct infringes and continues to infringe the MONCHHICHI Works in violation of 17 U.S.C. § 501 and 17 U.S.C. § 106(1) - (3), (5).

56.     Defendants reap the benefits of the unauthorized copying and distribution of the MONCHHICHI Works in the form of revenue and other profits that are driven by the sale of Infringing Sekiguchi Products.

57.     The Defendants have unlawfully appropriated Sekiguchi's protectable expression by taking material of substance and value and creating Infringing Sekiguchi Products that capture the total concept and feel of the MONCHHICHI Works.

58.     Upon information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to, Sekiguchi's rights.

59.     The Defendants, by their actions, have damaged Sekiguchi in an amount to be determined at trial.

60.     As a result of each Defendants' infringement of Plaintiff's exclusive rights under copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to its attorneys' fees and costs pursuant to 17 U.S.C. §505.

61.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law.

62.     Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights and ordering that each Defendant destroy all unauthorized copies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

d.  using the Asserted Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Asserted Trademarks;

e.  passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control or supervision of Plaintiff and approved by Plaintiff for sale under the Asserted Trademarks;

f.  committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff; and

g.  further infringing Plaintiff's Asserted Trademarks and damaging Plaintiff's goodwill; and

h.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of the Asserted Trademarks or any reproductions, counterfeit copies or colorable imitations thereof.

2)      Plaintiff further requests that Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through e, above.

3)      Plaintiff further seeks entry of an order that, upon Plaintiff's request, any third party receiving notice who is providing, or has provided, services to any of the Defendants, or in connection with any of the ecommerce Internet stores operating under the Defendant Aliases, or other aliases operated by Defendants, including, without limitation, any online marketplace platforms, such as Amazon, or third party payment processors, such as Amazon Pay (collectively and hereinafter ("Third Party Providers"), shall:

a.   disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products using the Asserted Trademarks, including any accounts associated with the Defendants listed on Schedule A;

b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products using the Asserted Trademarks; and

c.   cooperate in Plaintiff's enforcement of any judgment in Plaintiff's favor as provided by the Court.

4)      Plaintiff further requests that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Asserted Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

5)      Alternatively, Plaintiff requests an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every counterfeit use of the Asserted Trademarks.

6)      Plaintiff also seeks an award of its reasonable attorneys' fees and costs.

Plaintiff also seeks an award of any and all other relief that this Court deems just and proper.

15

DATED: May 23, 2025

Respectfully submitted,

*/s/ Matthew A. Werber*
Matthew A. Werber (Ill. # 6287658)
mwerber@nixonpeabody.com
Peter Krusiewicz (Ill. # 6342444)
pkrusiewicz@nixonpeabody.com
**NIXON PEABODY LLP**
70 W. Madison St., Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

4935-4181-3572.2

15